**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

APRIL GABLE,

              Plaintiff,

v.                                        Case No. 6:19-cv-1421-Orl-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

              Defendant.

_____

## OPINION AND ORDER[1]

### I. Status

April Gable ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a "[h]erniated dis[c], bulging dis[c]-surgery," "spinal stenosis," "back pain," "degenerative dis[c] disease," "arthritis in bones," and "weak" legs with associated "pain due to back problems." Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed November 4, 2019, at 67-68, 76, 263.   Plaintiff filed an application for SSI on May 29, 2015, alleging a disability onset date of December 15, 2010.[2]   Tr. at 220-24.   The

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed November 4, 2019; Reference Order (Doc. No. 16), signed November 4, 2019 and entered November 5, 2019.

[2]      For whatever reason, the administrative transcript contains two SSI applications: one dated June 4, 2015, see Tr. at 220, and one dated April 28, 2015, see Tr. at 225.   It is unclear when the April 28, 2015 application was actually received by the SSA because the date stamp is illegible.   See Tr. at 225. The protective filing date of the SSI application is listed in the administrative transcript as May 29, 2015. See, e.g., Tr. at 67, 76.

application was denied initially, Tr. at 67-74, 75, 89-92, and upon reconsideration, Tr. at 76-85, 86, 97-102.

On May 24, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 32-66.   The ALJ issued a Decision on August 3, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 17-27.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 217-19 (request for review), 327-32 (memorandum in support); see Tr. at 4-5 (Appeals Council exhibit list and order).   On May 29, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 1, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments.   First, she contends the ALJ erred in evaluating the opinions of two treating physicians: neurosurgeon Rafael Allende, MD, and primary care provider Jorge Ribet, MD.   Memorandum of Law (Doc. No. 19; "Pl.'s Mem."), filed January 6, 2019, at 1, 13-16.   Second, Plaintiff alleges the ALJ erred in evaluating her testimony regarding the effects of her impairments. Id. at 1, 17-22.  On March 2, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's contentions.   After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

- 2 -

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-27.   At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 29, 2015, the application date."   Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairment: lumbar degenerative disc disease with osteoarthritis and radiculopathy status-post laminectomy."   Tr. at 19 (emphasis and citation omitted).   At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

---

[3]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light exertional work as defined in 20 CFR [§] 416.967(b) with the following limitations: she requires a sit/stand option, allowing her to shift from either sitting or standing at intervals of approximately 30 minutes, provided she does not leave the workstation and the shifting of positions results in her being off-task no more than 1-2 minutes with each position shift; she is incapable of climbing stairs, ladders, ropes, and scaffolds and is incapable of kneeling, crouching, and crawling; she is capable of occasionally climbing ramps and occasionally balancing and stooping; she is capable of frequently reaching in all directions with the bilateral upper extremities; she must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; she is incapable of operating a motor vehicle for work; and she would be off task up to 10% of the workday in addition to regularly scheduled breaks due to her pain and an inability to maintain concentration and focus.

Tr. at 22 (emphasis omitted).   At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Bank Teller."   Tr. at 25 (some emphasis and citation omitted).   At step five, after considering Plaintiff's age ("40 years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, Tr. at 25, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Information Clerk" and "Counter," Tr. at 26 (some emphasis omitted).   In the alternative, further reducing Plaintiff's RFC to sedentary (rather than light) work with the additional limitations set forth in the RFC, the ALJ found Plaintiff would be able to perform the jobs of "Document Preparer," "Addresser," and "Order Clerk."   Tr. at 26-27.   The ALJ concluded that Plaintiff "has not been under a disability . . . since May 29, 2015, the date the application was filed."   Tr. at 27 (emphasis and citation omitted).

- 4 -

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).   Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted).   It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted above, Plaintiff challenges the ALJ's handling of two medical opinions and the ALJ's evaluation of her testimony regarding the effects of her impairments.   Defendant responds by asserting the ALJ did not err in evaluating the medical opinions or in

evaluating Plaintiff's testimony.   Def.'s Mem. at 5-15.   These matters are addressed in turn.

## A.   Medical Opinions

### 1.   Applicable Law[4]

The Regulations establish a hierarchy among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion.   See 20 C.F.R. §§ 404.1527, 416.927.   Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not."   Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence."   Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3)

---

[4]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that were in effect on or otherwise appliable to the date the claim was filed, unless otherwise noted.

[5]     "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

"[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the

---

[6]      A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink, 935 F.3d at 1259; Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

## 2. Dr. Allende

Dr. Allende, a neurosurgeon, saw Plaintiff in June and July 2014 and determined that surgery was required because of "a large L5-S1 herniated nucleus pulposus with nerve compression" and because of Plaintiff's failure to improve with conservative treatment for more than a year.   Tr. at 376-77; see Tr. at 550-51.[7]   In July 2014, Dr. Allende performed a "Right L5-S1 hemilaminotomy and diskectomy."   Tr. at 417, 540. From August 2014 through October 2014, Plaintiff generally did well after the surgery. See Tr. at 383, 385, 389; but see Tr. at 387 (some pain reported in September 2014). However, Plaintiff eventually began having back pain that became recurrent, with severe pain in her upper and lower extremities.   See, e.g., Tr. at 392, 398, 401, 404, 414, 590, 595.

---

[7]        The administrative transcript contains some duplicate records from Dr. Allende.   Duplicates are not cited.

By March 2016, Plaintiff's pain continued despite medications such as Diclofenac, Morphine Sufate, Gabapentin, Tylenol, and Medrol.   Tr. at 587.   Dr. Allende diagnosed post-laminectomy syndrome, lumbar degenerative disc disease, and chronic right-sided low back pain with right-sided sciatica.   Tr. at 588.   He recommended that Plaintiff see a pain management specialist for epidural steroid injections prior to additional surgical intervention.   Tr. at 588.   In September 2016, Plaintiff was experiencing severe back pain that radiated into her lower extremities (the right leg worse than the left).   Tr. at 584. Her pain was worse with prolonged standing, sitting, or "any ambulation whatsoever."   Tr. at 584.   Plaintiff reported that the injections by the pain management specialist "did not help." Tr. at 584.   Dr. Allende noted Plaintiff was "functionally debilitated due to her condition." Tr. at 584.   He diagnosed failed back syndrome and lumbosacral radiculopathy.   Tr. at 585.   In October 2016, Dr. Allende recommended "lumbar facet blocks and SI joint injections."   Tr. at 579-80.

By May 2017, Dr. Allende recommended further decompression surgery at L4-L5 and L5-S1 with possible arthrodesis. Tr. at 576-77.   Plaintiff was hesitant to undergo another surgery but agreed to consider it.   Tr. at 577.   In April 2018, without improvement despite physical therapy and pain management, further surgery continued to be Dr. Allende's recommendation.   Tr. at 604-05.

Also in April 2018, Dr. Allende filled out a residual functional capacity questionnaire. Tr. at 600-03.   In the form, Dr. Allende explained Plaintiff's diagnoses, assigned a "Guarded" prognosis, identified the clinical findings upon which his recommendations were based; explained the recommended "a Lumbar 5-S1 Laminectomy [and] fusion"; Tr. at 600, and gave the following functional limitations.   Plaintiff cannot walk any city blocks

without rest or severe pain; she can sit and stand ten minutes at a time before needing to get up or sit back down; she can sit or stand/walk less than two hours total per day; and she must use a cane or assistive device. Tr. at 601-02.   Plaintiff can occasionally lift less than ten pounds but never more than that; she can never twist or stoop, can rarely crouch or climb ladders, and can occasionally climb stairs.   Tr. at 603.   Plaintiff has no limitations in reaching, handling or fingering.   Tr. at 603.   Plaintiff should be expected to miss more than four days of work per month as a result of her impairments or treatment.   Tr. at 603.

### 3.  Dr. Ribet

Dr. Ribet, together with a nurse practitioner, was Plaintiff's primary care provider during the relevant time.   See, e.g., Tr. at 427-37, 444-534.   In June 2016, Dr. Ribet completed a residual functional capacity questionnaire.   Tr. at 438-41.   He opined as follows.   Plaintiff has constant, neuropathic pain and radiculopathy pain of "8-9/10."   Tr. at 438.   She has an abnormal gait and reduced motion in the lumbar area.   Tr. at 438. She has had "poor response" to surgery.   Tr. at 438.   Dr. Ribet's opinions regarding Plaintiff's functional capacity were very similar to Dr. Allende's opinions.   According to Dr. Ribet, Plaintiff's pain and other symptoms will constantly interfere with attention and concentration.   Tr. at 439.   She cannot walk any city blocks without rest or severe pain. Tr. at 439.   Plaintiff can sit and stand only ten minutes at a time.   Tr. at 439.   She can sit and stand/walk less than two hours total in the day.   Tr. at 440.   Plaintiff must use a cane or assistive device.   Tr. at 440.   She can occasionally lift and carry ten pounds but no more than that.   Tr. at 440.   Plaintiff can never twist or stoop, she can rarely crouch, and she can occasionally climb ladders or stairs.   Tr. at 441.   Plaintiff should be expected to miss more than four days of work per month.   Tr. at 441.

- 11 -

### 4. Analysis of ALJ's Findings

The ALJ assigned "little weight" to the opinions of both Dr. Allende and Dr. Ribet. Tr. at 24.   As to Dr. Allende, the ALJ found his "opinions are inconsistent with his own treatment notes."   Tr. at 24.   To support that finding, the ALJ focused entirely on Plaintiff's gait and muscle tone/strength/sensation:

> While Dr. Allende observed [Plaintiff] to sometimes have an antalgic gait, he also noted her gait was independent without assistance.   Her gait was stable without assistance in February and March 2016.   Dr. Allende also observed her muscle tone, muscle strength, and sensation to be normal.

Tr. at 24 (citations omitted).

The ALJ's reason for discounting Dr. Allende's opinion is not supported by substantial evidence and does not amount to the requisite good cause.   In finding Dr. Allende's opinion to be inconsistent with his treatment notes, the ALJ focused on Plaintiff's "stable" gait during a relatively early time period (February and March 2016).   Later notes from September 2016, continuing into April 2018, document Plaintiff having a "very antalgic" gait despite it being independent.   Tr. at 585, 605.

While Plaintiff's "muscle tone and strength" were "good throughout" even into April 2018, Tr. at 605; see Tr. at 24 (ALJ's finding), the balance of Dr. Allende's treatment notes appear to support, rather than contradict, his opinion as to Plaintiff's RFC.   In discounting Dr. Allende's opinion, the ALJ did not recognize Dr. Allende's notation, made after the notes upon which the ALJ primarily relies, that Plaintiff was "functionally debilitated due to her condition."   Tr. at 584.   Nor did the ALJ recognize that Plaintiff's pain was worse with prolonged standing, sitting, or "any ambulation whatsoever."   Tr. at 584.   And, perhaps most importantly, the ALJ failed to recognize that in 2017 and 2018, Plaintiff's pain was so

- 12 -

significant—even after physical therapy and seeing a pain management specialist—that Dr. Allende found additional surgery to be necessary.   See Tr. at 576-77, 604-05. Remand is required for reconsideration of Dr. Allende's opinion.

As to Dr. Ribet, the ALJ's reasoning for discounting his opinion was even more brief and conclusory: "Dr. Ribet's records do not note any gait abnormalities, muscle weakness, or sensory loss that would support the level of restrictions he recommends."   Tr. at 24 (citation omitted).   In making this finding, the ALJ cited "Exhibits 4F [and] 6F" which together contain more than 100 pages.   See Tr. at 420-37, 442-539.   This sort of citation, combined with a rather conclusory reason, does not allow for meaningful review.   In any event, especially given that Dr. Ribet's opinion is quite similar to Dr. Allende's and that "consistency" is one of the factors an ALJ must consider in determining the weight to afford a medical opinion, see 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5), the ALJ on remand shall reevaluate Dr. Ribet's opinion as well.

## B.  Plaintiff's Testimony Regarding Effects of Her Impairments

### 1.  Applicable Law

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### 2. Plaintiff's Testimony

Plaintiff testified about how her impairments affect her daily.  She has "to think about every step [she] take[s], every movement [she] make[s], because if [she does not, she] could end up on the floor."  Tr. at 40.  Plaintiff has "fallen several times."  Tr. at 40.  She cannot stand or sit for very long.  Tr. at 40.  She has to constantly move positions to attempt to relieve the pain.  Tr. at 41.  She has trouble sleeping.  Tr. at 41.  She lays down, including in her zero gravity chair, more than half the day.  Tr. at 53.

"[D]aily life things [are] very hard for [her]."  Tr. at 41.  She helps as much as she can with chores.  Tr. at 42.  She folds some laundry sitting down, and she can "pick up a couple of things at a time."  Tr. at 42.  She can wash "a few" dishes at a time before having to sit down, so it takes her "a long time."  Tr. at 42.  She can fix frozen dinners by putting them in the oven. Tr. at 42.  She does not sweep, mop, or vacuum.  Tr. at 42-43.  She sits in the shower until needing to stand to finish washing.  Tr. at 43.  She does "very limited shopping" that involves "grab[bing] a couple of things" before leaving.  Tr. at 55.  She uses the cart to balance herself.  Tr. at 56.  If the items she needs are in the back of the store, someone else goes inside for her.  Tr. at 55.

As far as functional abilities, Plaintiff testified she is only able to sit ten to fifteen minutes at a time before needing to get up.  Tr. at 50.  After that amount of time, she gets numbness, tingling, and stiffness.  Tr. at 50-51.  She gets "antsy" and if she does not get up, "lightning rods will  . . . go through [her] spine" and she will see "white flashes."  Tr. at 51.  She can only stand ten minutes at a time, and she would need to lean on something while doing it.  Tr. at 51.  She can walk fifteen to seventeen minutes at a time.  Tr. at 51-52.  When asked by the ALJ why she is "walking strangely," Plaintiff responded that every

step she takes is painful.   Tr. at 52.   She gets weakness, burning, and tingling in her leg.

Tr. at 52.   Plaintiff testified she can lift about half a gallon but any more than that hurts her

back.   Tr. at 52.   She cannot climb a flight of stairs.   Tr. at 52-53.   When recently trying

to go over a "small transition floor" in her house, she fell to the floor.   Tr. at 53.   Plaintiff

"always ha[s her] cane with [her]."   Tr. at 59.   Plaintiff is able to drive short distances.   Tr.

at 56.[8]

Plaintiff testified about the medications she takes, and other measures she has

taken, to attempt to relieve her pain.   Tr. at 48-49.   She testified about the side effects of

her medications.   Tr. at 50. Plaintiff also testified about the latest recommended surgery.

Tr. at 46-47.   She evidently got a second opinion from a doctor in Miami, who concurred

with Dr. Allende that that a "spinal fusion" surgery is necessary.   Tr. at 47.   Plaintiff

testified she is "going to have to do the spinal fusion, because that is the only option [she

has]."   Tr. at 47.   The prognosis is that the surgery "would maybe only change [her] pain

by 30%."   Tr. at 47.   Plaintiff's plan at the time of the May 24, 2018 hearing was to have

the surgery "in August or September."   Tr. at 48.   Plaintiff is afraid to have the surgery,

but she "can't continue to live like this, either, because it's so awful."   Tr. at 58.

### 3.   Analysis of ALJ's Findings

The ALJ found Plaintiff's "medically determinable impairments could reasonably be

expected to produce the . . . alleged symptoms; however, [Plaintiff's] statements

concerning the intensity, persistence, and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the

---

[8]      Plaintiff testified she drove herself to the hearing before the ALJ, leaving her house at 8:00 and arriving at 9:30, making two stops along the way because her leg was hurting and going numb.   Tr. at 57.

- 16 -

reasons explained in th[e D]ecision."   Tr. at 23.   The ALJ then recognized the relevant factors to consider in evaluating Plaintiff testimony, Tr. at 23, but he did not actually discuss the testimony itself, except to say that Plaintiff "alleges difficulty due to a lumbrosacral disorder and pain that makes it difficult for her to stand or sit for long periods."   Tr. at 23. Nor did the ALJ <u>evaluate</u> the relevant factors except to generally discuss portions of the medical evidence.   Tr. at 23-25.   In addition, the ALJ did not recognize anywhere in the Decision Plaintiff's testimony (as corroborated by the medical evidence) that she has to have an additional surgery because other interventions have not relieved the pain.   The ALJ's Decision does not allow for meaningful review of the findings regarding Plaintiff's testimony about her impairments.   On remand, the ALJ shall reevaluate Plaintiff's testimony.

## V. Conclusion

Based on the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the opinions of Dr. Allende and Dr. Ribet; specify the weight assigned to the opinions and the reasons why; and absent good cause reasons supported by substantial evidence for discounting the opinions, include the stated limitations in the residual functional capacity and hypothetical to the vocational expert;

(B)     Reevaluate Plaintiff's testimony about the effects of her impairments; and

(C)     Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 17, 2020.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record